2023 IL App (2d) 220432
No. 2-22-0432
Opinion filed November 29, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-272 |
| ANGEL PADILLA, | ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Birkett and Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1    After a jury trial, defendant, Angel Padilla, was convicted of two counts of vehicular

invasion (720 ILCS 5/18-6(a) (West 2020)), two counts of domestic battery (*id.* § 12-3.2(a)(1)),

and one count of aggravated domestic battery (*id.* § 12-3.3(a)). The trial court merged the vehicular

invasion and aggravated battery counts into a single conviction of vehicular invasion and sentenced

defendant as a Class X felon to 30 years' imprisonment. On appeal, defendant contends that he

was not proved guilty beyond a reasonable doubt of vehicular invasion. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The State filed a seven-count indictment against defendant but dismissed two counts before

trial. Of the remaining counts, counts I and II charged defendant with vehicular invasion based on

his *reaching into* the interior of a motor vehicle with the intent to commit (1) aggravated domestic battery against Jill Roodhouse by stabbing her with a knife, requiring stitches (count I), and (2) domestic battery against Roodhouse, when he had previously been convicted of domestic battery (count II). Count III charged defendant with aggravated domestic battery in that he knowingly caused Roodhouse, a member of his family or household, great bodily harm by stabbing her in the face and back, requiring stitches. Count IV charged defendant with domestic battery by knowingly causing bodily harm to Roodhouse, a family member, by stabbing her in the face and back, when he had previously been convicted of domestic battery. Count VI charged defendant with committing aggravated assault by knowingly pointing a knife at Nicole Minchuk and placing her in reasonable apprehension of a battery.

¶ 4     At trial, Roodhouse testified as follows. She met defendant in February 2014, and they dated sporadically until October 2018. In May 2020, they resided next door to each other in a rooming house in De Kalb. Starting in late April or early May 2020, Roodhouse allowed defendant to use her car several times. On May 21, 2020, he drove her car to Rockford and returned late that afternoon. Meanwhile, Roodhouse's friends Minchuk and Theresa Mullins asked Roodhouse to drive them to Rochelle so that Mullins could drop off a computer for her daughter.

¶ 5     Roodhouse testified that, at about 5 p.m., she picked up her friends. Defendant wanted something from the store, so she made the purchase and dropped it off for defendant. At about 7:30 p.m., the women drove off to Rochelle. En route, Roodhouse's phone received numerous text messages from defendant. Upon arriving in Rochelle at about 8:30 to 9 p.m., she read and responded to several messages. At about 9:45 p.m., they started driving back. On the way, they picked up a male friend of Mullins.

¶ 6      Roodhouse testified that her phone constantly rang as she drove back home, but she did not read any of the messages. They returned at about 10:20 p.m. Behind the rooming house was a garage with a driveway between. Roodhouse parked "[r]ight behind the garage." Minchuk was in the front passenger seat, and the others were in the back seat. It was very dark, and there was no artificial light where Roodhouse parked.

¶ 7      Roodhouse testified that "right away" after she parked, defendant "leaned in the car" and "jumped in on [her]." She testified that she recognized the defendant immediately and thought he was "being like, you know, a Halloween scare thing." Roodhouse looked right into his eyes, and she leaned back toward the front passenger seat, which Minchuk occupied. Defendant then struck her several times with what she initially thought was a closed fist but would eventually learn was a knife. Not knowing that she had been stabbed, Roodhouse called defendant an "asshole" and started to exit the car. Defendant turned around and ran away. She pursued him. After they went a few feet, he turned around, swung at her, and stabbed her in the back. It was at this point that all parties present realized that defendant was armed with a knife. Defendant ran toward the back of the car, but the male passenger blocked his access to the interior.

¶ 8      Roodhouse testified that she realized she was bleeding, so she entered the rooming house and went to a shared bathroom. Her friends followed. Roodhouse drove to the hospital, where she received stitches to her lip and back. The attack left her with several scars.

¶ 9      Roodhouse testified that, after leaving the hospital, she read defendant's messages on her phone. Photographs of the messages and Roodhouse's replies to some of them were admitted into evidence. One message read, " 'Don't come back here. Forget you live here.' "

¶ 10      On cross-examination, Roodhouse testified that she turned off her car's headlights when she parked behind the garage. Her attacker wore black jeans and a black hoodie. On redirect

examination, Roodhouse testified that her car had interior lights above the rearview mirror and that when defendant opened the driver's door, these lights came on, giving her a clear view of defendant's face. On recross-examination, Roodhouse testified that the interior lights to her vehicle only come on once the door is opened. She further testified that defendant opened the door to her vehicle, triggering the interior lights, and jumped into the vehicle.

¶ 11 Minchuk testified as follows. Before May 21, 2020, she had met defendant three or four times. Although it was very dark behind the garage, she recognized him when he opened the driver's door and entered the car. Defendant appeared to be punching Roodhouse. Minchuk saw blood pouring from Roodhouse's face. Defendant walked away, Roodhouse followed him, and Minchuk exited and followed them. She called out to defendant to calm down, but he lunged at her with a knife and told her to mind her own business. She backed off. She saw defendant stab Roodhouse in the back. Minchuk and the two other passengers followed Roodhouse inside the house. Shortly afterward, Roodhouse drove to the hospital.

¶ 12 For defendant, Austin Cantrell testified as follows. On May 21, 2020, he was residing at the rooming house. That evening, his friend Ashley visited him. Shortly after she left, he was looking out his back window toward the garage when he heard someone saying he or she was being stabbed. Cantrell descended the stairs, opened the back door of the building, and saw Ashley driving away. He also saw a tall black male in front of him standing near a gold car. A second male emerged from behind the garage, holding a knife. The second male walked toward the first male, who warned him not to come any closer. The second male was dressed all in black, was about six feet tall, and weighed more than 200 pounds. Shortly afterward, Roodhouse appeared and asked whether she had been stabbed. Cantrell, noticing that Roodhouse was bleeding from her face, said yes. Cantrell was asked if the second male resembled defendant. Cantrell said no.

Defendant then rested, the parties both gave their closing arguments, and the jury was instructed as to the law.

¶ 13    The relevant jury instructions providing the legal definition of the offense of vehicular invasion focus only on the reaching portion of the statute: "A person commits the offense of Vehicular Invasion when he knowingly, by force and without lawful justification, *reaches into* the interior of a motor vehicle while the motor vehicle is occupied by another person, with the intent to commit therein the offense of Domestic Battery." (Emphasis added.) See Illinois Pattern Jury Instructions, Criminal, No. 11.93 (4th ed. 2000). The jury was not provided an instruction regarding vehicular invasion by entering.

¶ 14    The jury convicted defendant of counts I through IV and acquitted him on count VI, aggravated assault. The trial court merged counts II through IV into count I and sentenced defendant to 30 years' imprisonment. He timely appealed.

¶ 15                                II. ANALYSIS

¶ 16    On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of vehicular invasion. He notes that a person commits the offense "when he or she knowingly, by force and without lawful justification, enters or reaches into the interior of a motor vehicle while the motor vehicle is occupied by another person or persons, with the intent to commit therein a theft or felony." 720 ILCS 5/18-6(a) (West 2020). Defendant then argues that the State failed to prove that he "used *force* to *enter*" (emphasis added) Roodhouse's car. Rather, defendant maintains, the evidence proved only that he opened the unlocked door of a vehicle. We disagree.

¶ 17    Although defendant's argument is framed in terms of the sufficiency of the evidence, it also implicates a question of statutory interpretation. In reviewing the sufficiency of the evidence in a criminal case, a reviewing court must inquire "whether, after viewing the evidence in the light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Baskerville*, 2012 IL 111056, ¶ 31 (citing *People v. Davison*, 233 Ill. 2d 30, 43 (2009)). "Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State." *Id.* When determining the sufficiency of the evidence, it is not the province of the reviewing court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Findings of weight and credibility are within the exclusive jurisdiction of the jury. *People v. Smeathers*, 297 Ill. App. 3d 711, 717 (1998). To the extent that statutory terms like "force," "reach," and "enter" are at issue, we follow well-settled principles of statutory interpretation. The fundamental goal of statutory interpretation is to give effect to the legislature's intent. *People v. Davidson*, 2023 IL 127538, ¶ 14. The best indicator of the legislature's intent is the plain and ordinary meaning of the statutory language. *Id.* If the language of the statute is unambiguous, we apply it as written without any extrinsic aids. *People v. Williams*, 2016 IL 118375, ¶ 15.

¶ 18     We turn first to the language of the vehicular invasion statute. "[A] person commits vehicular invasion when he or she knowingly, by force and without lawful justification, enters *or* reaches into the interior of a motor vehicle while the motor vehicle is occupied by another person or persons, with the intent to commit therein a theft or felony." (Emphasis added.) 720 ILCS 5/18-6(a) (West 2020). The use of "or" in the statute is disjunctive. According to well-settled principles of statutory interpretation, material to either side of the disjunctive "or" must be viewed separately. *People v. Franklin*, 135 Ill. 2d 78, 106 (1990). Applying this principle here, a person can commit the offense of vehicular invasion *either* by entering *or* by reaching into the interior of a motor vehicle. Thus, vehicular invasion by entering and vehicular invasion by reaching are two separate and distinct ways of committing the same offense.

¶ 19    The State has exclusive discretion to decide which charges are brought against a defendant; it has the authority to choose how an offense is tried and charged. *People v. Jamison*, 197 Ill. 2d 135, 161 (2001). We make this observation to note that defendant's argument that the evidence did not prove that he "used force to enter" Roodhouse's vehicle misses the mark. The vehicular invasion indictments, as well as the jury instructions, all charged that defendant used force when he *reached* into Roodhouse's car. See Illinois Pattern Jury Instructions, Criminal, Nos. 11.93, 11.94 (4th ed. 2000). Therefore, whether defendant *entered* Roodhouse's car was not a hurdle that the State's evidence had to clear. Consequently, defendant's argument, predicated on the statute's entry version of the offense, is not pertinent.

¶ 20    We note, too, that defendant's conflation of the two versions of the offense is understandable, given that published decisions often use these two terms interchangeably or at least do not distinguish between them. See, *e.g.*, *People v. Walls*, 2022 IL App (1st) 200167, ¶¶ 16-19; *In re Thomas T.*, 2016 IL App (1st) 161501, ¶¶ 11-17; *People v. Isunza*, 396 Ill. App. 3d 127, 130-32 (2009). However, in this case, it is clear from the record that the State charged defendant with the reaching version of the offense, the jury was instructed only as to that version, and defendant was found guilty. Therefore, defendant's argument that the State failed to prove that defendant used force to *enter* Roodhouse's vehicle is inapposite, as he was indicted and convicted of vehicular invasion by reaching, not entering.

¶ 21    We likewise reject defendant's argument that the State's evidence failed to show that he committed the offense of vehicular invasion with *force*. While the term "force" is not defined in the vehicular invasion statute, its plain and ordinary meaning is " '[p]ower, violence, compulsion, or constraint exerted upon or against a person or thing.' " *Isunza*, 396 Ill. App. 3d at 131 (quoting Black's Law Dictionary 644 (6th ed. 1990)). Here, defendant's act of reaching into the vehicle was

simultaneous with the stabbing. Roodhouse testified that, almost immediately after she parked, defendant "leaned in the car," "jumped in on [her]," and stabbed her repeatedly. It is axiomatic that reaching into a vehicle to stab someone is forceful, and here the acts of reaching and stabbing were inextricable. Therefore, we conclude that the evidence sufficiently showed that defendant used force in reaching into Roodhouse's vehicle, thereby supporting his conviction of vehicular invasion.

¶ 22                                  III. CONCLUSION

¶ 23    For the foregoing reasons, we affirm the judgment of the circuit court of De Kalb County.

¶ 24    Affirmed.

---

### *People v. Padilla*, **2023 IL App (2d) 220432**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 20-CF-272; the Hon. Marcy L. Buick, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Jeffrey Bruce Kirkham, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Richard D. Amato, State's Attorney, of Sycamore (Patrick Delfino, Edward R. Psenicka, and Ivan O. Taylor Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---